TARKINGTON )
  v.               )   CHANCERY.
GOODWIN & MAURY )

WHITE, J., delivered the following statement of the case, and opinion of the court:—

The complainant in his bill alleges that he improved a tract of land belonging to Absalom Tatum under an agreement that he should be paid the value of those improvements, that after the death of Tatum, purchased the land of Goodwin, one of Tatum's executors, at the price of six dollars per acre—that at the time of the purchase it was agreed the value of the improvements should be deducted out of the purchase money when the value could be ascertained; and that the improvements are worth about four hundred dollars, for which no credit has been given. That prior to the 16th day of February 1807, he had by sundry payments, reduced the debt to $698, and that on that day, by the hand of one Hicks he paid $250, and that on the same day, he paid in person, $290, for each of which payments he received a receipt; and that afterwards, Goodwin, by fraud, procured from Hicks the receipt given for $250, and will not give any credit for it. The bill further states, that the complainant to secure the purchase money, executed a mortgage on the land; and that in October 1807, Maury, as agent

for Goodwin, applied to the complainant, for the balance due, that for the purpose of having his land unincumbered, he gave his bond for the sum then claimed,. and lifted the mortgage, Maury at the same time stipulating that giving the bond should not prejudice his claim to an allowance for the value of the improvements, or his claim to a credit for the $250. That upon obtaining a credit for these items, not one cent will be due; on the contrary, Goodwin will be considerably in his debt.

Goodwin, in his answer admits the sale of the land, and states that his price was six dollars per acre, but that in consideration of the improvements, the price was reduced to five dollars and eighty-seven and one-half cents. He states positively that the value of the improvements were taken into view, and an allowance made for them in fixing the price of the land. The answer also alleges that the complainant, did not pay the $290 in the bill mentioned, but only $40, which together with the $250, paid by Hicks, amounted to $290 for which sum a receipt was executed to the complainants, and the one given to Hicks taken up.

The answer of Maury admits the agreement that the taking of the bond should not prejudice Tarkington in his claim for improvements, but alleges that at the time the bond was given the claim for a credit of the $250 was considered as abandoned.

To these answers, there was a general replication, and the cause was set down for hearing.

It has been proved that when the contract relative to the improvements was made, Tatum agreed to let Tarkington enjoy the land six years, provided, it was not soon sold; and in case of a sale at any earlier day, Tarkington was to quit the possession, and Tatum was to pay for the

50

improvements, after deducting the rents and profits. From the testimony, we cannot precisely ascertain how long Tarkington occupied the premises before he purchased; it is proved that other lands of equal quality was sold about the same time for four dollars and a half per acre, and two witnesses proved that the improvements were valued by them at $375. They do not precisely state by what rule they went in making the valuation, but it is most probable that they considered the value of the land would be, by the improvements, increased to that amount.

If Tarkington is entitled to a deduction for the value of these improvements, we consider the true rule to ascertain the amount would be to fix what the improvement cost, deducting therefrom the value of the use of the premises during the time they were occupied and give a credit for that sum.

However, the main point here has the complainant shown himself entitled to any allowance. Goodwin positively denies his right to any credit. It seems to the court that the principal object of this provision in the parol lease was to secure the complainant in case any other should purchase and be compelled to yield the possession before the expiration of six years; and when he, himself becomes the purchaser, he stand in some respects, on worse ground as to a claim of this kind. In such a case, in the absence of all proof, the court would presume, that Tarkington, in contracting for the fee had taken care to fix the price at such a sum as would satisfy him for what he was fairly entitled to for previous improvements.

It would be so much a matter of course to take this circumstance into consideration in negotiating the purchase, that it ought not to be supposed to be overlooked

and the matter left unadjusted, unless there were satisfactory proof that such was the fact. *(1)* And in this case Goodwin's answer gives such a rational account of the time and manner in which these improvements were paid for, that the court must have clear testimony before a decree would be pronounced against it.

But it is said, that this proof is furnished. Only one witness speaks upon the point, and he says that Goodwin applied to him for information on the subject, and after it was procured seemed to think that an allowance ought to be made. Whether this conversation took place before or after the contract was finally closed, is not certain; and it may still be that Goodwin's statement is correct. Upon the whole complexion of the case, the court is pretty well satisfied that it is so.

As to the payment of the $290, Goodwin in his answer, positively denies it; and Maury says that when the bond was executed, he considered that claim to be abandoned. There is no proof to support the bill at all contradicting the statements in the answers.

The court is, therefore, of opinion, that the bill ought to be dismissed.

Grundy & Cooke, for the complainant.

Trimble, for the defendants.